UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-80442-Civ-Brannon

FRANKLYN P. DEMARCO, JR.,

    Plaintiff,

vs.

T.D. BANK, N.A.,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment (DE 43), to which Plaintiff responded in opposition (DE 47) and Defendant replied (DE 48). For the reasons discussed below, Defendant's Motion is **GRANTED**.

### I.  LEGAL STANDARD

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant bears the initial burden of showing the absence of a genuine issue of material fact by citing record evidence such as documents, affidavits, declarations, and other materials gathered in discovery. Fed. R. Civ. P. 56(c); *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). A fact is material if it "would affect the outcome of the suit under the governing law." *FindWhat Inv'r Grp. v. FindWhat.com*, 658

1

F.3d 1282, 1307 (11th Cir. 2011).  An issue is genuine if "a reasonable trier of fact could return judgment" for the non-movant.  *Miccosukee Tribe of Indians of Fla. v. U.S.*, 516 F.3d 1235, 1243 (11th Cir. 2008).  All facts and reasonable inferences are to be construed in the non-movant's favor, but only "to the extent supportable by the record." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009).

If the movant meets its burden, the burden shifts to the non-movant to show a genuine issue for trial by presenting more than mere allegations and designating specific factual evidence.  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999); *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir.1997). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

Importantly, material facts set forth in the movant's statement of facts and supported by record evidence are deemed admitted if not controverted by the opposing party.  S.D. Fla. L. R. 56.1(b).  This procedure makes "review of summary judgment motions less burdensome to the Court" and is intended "to reduce confusion and prevent the Court from having to scour the record and perform time-intensive fact searching."  *Gossard v. JP Morgan Chase & Co.*, 612 F. Supp. 2d 1242, 1245-46 (S.D. Fla. 2009) (quoting 2008 Comments to Local Rule 56.1); *Joseph v. Napolitano*, 839 F.Supp.2d 1324, 1329 (S.D. Fla. 2012).  However, even where an opposing party neglects to submit any alleged material facts in controversy, the court must still be satisfied that all the evidence in the record supports the uncontroverted material facts proposed by movant before granting summary judgment.  *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008).

## II.     BACKGROUND

Plaintiff is an individual resident of Palm Beach County. Defendant is national bank. In this breach of contract case, Plaintiff alleges that Defendant breached a settlement agreement that was entered into by both parties to resolve a prior breach of contract case involving a mortgage loan dispute. In support of its summary judgment motion, Defendant has filed a statement of material facts (DE 43-7) that relies principally on the affidavit of Defendant's Vice President and Strategic Litigation Manager, Jordan Purington. (DE 43-2, Purington Aff. ¶ 2). In turn, Mr. Purington's affidavit is supported by attached documents, including the subject settlement agreement and addendum, an email between counsel discussing the settlement agreement, mortgage loan documents, and a credit report. (*Id.*). Defendant also cites to the pleadings and other discovery material in support of its motion.

Plaintiff did not file an opposing statement of material facts as required. S.D. Fla. L.R. 56.1. Instead, Plaintiff's response relies on the pleadings and an attached affidavit by Plaintiff (DE 47-1) which refers to attached credit reports, various letters, bank statements, a court filing, and other related material. In the interest of addressing this case on the merits, the Court has independently reviewed the record to piece together the following salient facts, viewed in the light most favorable to Plaintiff.

On April 26, 2006, Plaintiff took out a $4,000,000 mortgage loan from a predecessor bank to Defendant. (Am. Compl., DE 21 at 6; Purington Aff. ¶¶ 2-3). The loan was secured by Plaintiff's property located in Palm Beach, Florida. (Purington Aff. ¶ 4, Exs. A-B). On April 1, 2012, Plaintiff defaulted on the loan and Defendant reported the loan to the credit bureaus as delinquent. (Purington Aff. ¶¶ 5-6, 8).

On September 4, 2012, Plaintiff sued Defendant for (1) breach of contract, (2) specific performance, (3) fraud in the inducement, and (4) negligent misrepresentation, all in connection with the $4,000,000 mortgage loan. (Am. Compl., DE 21 at 2; Purington Aff. ¶ 10); *DeMarco v. TD Bank, N.A.*, Case No. 12-81036-Civ-Ryskamp/Hopkins (S.D. Fla. 2012). None of Plaintiff's claims in this prior case related to credit reporting. The case was dismissed with prejudice in Defendant's favor. *See DeMarco*, Case No. 12-81036-Civ-Ryskamp/Hopkins, DE 14, DE 15.

Plaintiff appealed. On June 28, 2013, while the appeal was pending, the parties entered into the confidential settlement agreement that is now the subject of this case. (Am. Compl., DE 21 at 6-15; Purington Aff. ¶ 12). Following the parties' settlement, at their joint request, the prior case was dismissed with prejudice. *See DeMarco*, Case No. 12-81036-Civ-Ryskamp/Hopkins, DE 16, DE 19.

In relevant part, the parties' settlement agreement identified the prior case proceedings, stated that the $4,000,000 loan "is in default," and expressed the parties "desire to settle, discontinue and end, with prejudice, all claims and disputes" in the prior case. (Am. Compl., DE 21 at 6). The settlement agreement spans ten pages and includes, among other things, (1) a general release by Plaintiff, (2) Defendant's agreement to forbear on any attempt to collect or enforce the loan until June 1, 2014, (3) provisions governing Plaintiff's ongoing efforts to sell the mortgaged property, (4) confidentiality, non-disclosure, and non-disparagment provisions, and (5) acknowledgment that both sides consulted with legal counsel before signing the agreement. (*Id.* at 7-15). Section 9 of the agreement governing confidentiality and non-disclosure contains a "Non-Disparagement" provision providing that:

4

> Neither [Plaintiff] nor [Defendant] will engage in any conduct that is adverse to the other, including making any disparaging or negative remarks or statements that would adversely affect the reputation of the other in any business or professional community.

(DE 21 at 11, Settlement Agmt. § 9.3).

On May 30, 2014, the parties entered into an addendum agreement to extend the end of the forbearance period through July 15, 2014. (Purington Aff. ¶ 17, Ex. E). As evidenced by a recorded "Satisfaction of Mortgage," Plaintiff paid off the loan in full by or before this newly agreed end date. (Pl. Aff. Ex. 3, DE 47-1 at 14; Purington Aff. ¶ 18).

On February 29, 2016, Plaintiff initiated this suit by suing Defendant once again for breach of contract. (DE 21). Plaintiff now asserts that Defendant disparaged him in violation of the settlement agreement by reporting that he "had been delinquent and had defaulted" on the prior loan. (*Id.* ¶¶ 19-20). As a result of these credit reports, Plaintiff claims that banks refused him credit forcing him to finance a recent building lot purchase at a much higher interest rate, resulting in damages exceeding $500,000. (Id. ¶¶ 21-22, 26).

### III. ANALYSIS

This diversity case arises in Florida, and it is undisputed that Florida law applies. In Florida, "[t]he elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *Alhassid v. Bank of Am., N.A.*, 2015 WL 11110557, at *6 (S.D. Fla. Nov. 4, 2015) (quoting *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003)).

It is undisputed that the first element is met because the parties' settlement agreement is a valid contract. Focusing on the next elements—breach and damages, Defendant asserts that (1) undisputed evidence shows that the credit reporting at issue occurred prior to the

5

settlement agreement's effective date and the agreement did not require Defendant to change prior accurate reporting; (2) the settlement agreement is unambiguous and does not include credit reporting provisions or any other provisions which altered Defendant's obligations to accurately report Plaintiff's account status and, moreover, an undisputed email shows that Defendant refused Plaintiff's request to include credit reporting as part of the settlement agreement, and (3) Plaintiff fails to show damages. (DE 43-1 at 1). The Court will address these arguments in turn.

### *1. Any Negative Credit Reporting by Defendant Predates the Settlement Agreement*

As a general rule, a court should consider a settlement agreement's effective date when evaluating alleged breaches of the settlement agreement. *See Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814, 822 (11th Cir. 2010) (under class action settlement agreement, relevant inquiry "is not whether the acts giving rise to the complaint occurred after the class action was filed or the settlement agreement was entered, but whether they occurred after the effective date of the settlement agreement.").

Here, the parties' settlement agreement is dated June 28, 2013. (Am. Compl., DE 21 at 6-15). This date is critically important. Plaintiff asserts that Defendant disparaged him in violation of the settlement agreement's non-disparagement clause by issuing negative credit reports about Plaintiff. And in response to Defendant's motion, Plaintiff claims that "Defendant has tendered no evidence as to the timing of its negative reporting on the Plaintiff, to determine whether it was before or after the Settlement Agreement." (DE 47 at 4). This is simply not so. On behalf of Defendant, Mr. Purington avers that the only negative credit reporting pertaining to Plaintiff occurred prior to the parties' settlement agreement, from April 2012 through June 2013. (Purington Aff. ¶ 22). According to Mr. Purington, this reporting

6

was accurately based upon Plaintiff's undisputed default on his mortgage loan starting with a missed monthly payment on April 1, 2012. (*Id.* ¶¶ 6-8, Am. Compl. DE 21 at 7).

Notably, Plaintiff agrees that the only negative remarks on his credit file occurred from April 2012 through June 2013, and an Experian credit report submitted by Plaintiff coincides with this time frame. (Pl. Aff. ¶¶ 6, 12). The Experian report (Pl. Aff. Ex. 1, DE 47-1 at 6), dated December 10, 2015, reflects Plaintiff's payment history as being anywhere from 30 to 180 days past due for the 15-month period from April 2012 through June 2013. Moving forward, for the entire 12-month period from July 2013 through June 2014, the report reflects Plaintiff's history as "ok" meaning "current/terms of agreement met." This reporting coincides perfectly with the settlement agreement's effective date and also with a recorded Satisfaction of Mortgage indicating that the loan was fully paid off as of July 18, 2014. (Pl. Aff. Ex. 3, DE 47-1 at 14). Thus, the undisputed evidence before this Court is that any negative credit reports by Defendant occurred prior to the settlement agreement's effective date. There were no material breaches of the settlement agreement as a matter of law, and Defendant is entitled to summary judgment for this reason alone.

### 2. Settlement Agreement Terms

Turning next to the parties' settlement agreement, it qualifies as a contract such that its construction and enforcement is governed by principles of Florida's contract law. *See Schwartz v. Fla. Bd. Of Regents*, 807 F.2d 901, 905 (11th Cir. 1985). "Under Florida law, courts must give effect to the plain language of contracts when that language is clear and unambiguous." *Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1246 (11th Cir. 2002) (citing *Hamilton Constr. Co. v. Bd. of Pub. Instruction*, 65 So.2d 729, 731 (Fla. 1953)). "Absent an ambiguity, interpretation of a contract is a question of law to be decided by the

court."  *Travelers Indem. Co. v. Hutson*, 847 So.2d 1113, 1114 (Fla. 1st DCA 2003). "Whether an ambiguity exists in a contract is also a question of law." *Id.*

When construing a contract, a court should read the contract as a whole, giving effect to each of the various provisions of the agreement if it can reasonably be done. *MDS (Canada), Inc. v. Rad Source Technologies, Inc.*, 822 F.Supp.2d 1263, 1296 (S.D. Fla. 2011); *Jones v. Warmack*, 967 So.2d 400, 402 (Fla. 1st DCA 2007). The court "should strive to give effect to the intent of the parties in accord with reason and probability as gleaned from the whole agreement and its purpose." *Arthur Rutenberg Corp. v. Pasin*, 506 So.2d 33, 34 (Fla. 4th DCA 1987). Florida law permits courts to consider extrinsic evidence not to vary the terms of the contract, but to explain, clarify or elucidate the ambiguous language with reference to the subject matter of the contract, the circumstances surrounding its making, and the relation of the parties. *Optowave Co. v. Nikitin*, 2006 WL 3231422, at *11 (M.D. Fla. Nov. 7, 2006) (citing *U.S. o/b/o Small Business Administration v. South Atlantic Production Credit Assoc.*, 606 So.2d 691, 695 (Fla. 1st DCA 1992)).

Applying the above principles of contract construction, the Court finds the parties' settlement agreement clearly did not impose any credit reporting requirements. On its face, the agreement is clear that credit reporting—past or future—was not a part of the deal. Plaintiff cites to portions of section 9 of the agreement governing confidentiality and non-disclosure to try and piece together an argument that Plaintiff understood that the agreement to hold "the alleged facts or transactions which form the basis of this agreement . . . strictly confidential" meant that Defendant would not report or disclose anything about any Plaintiff's previous late payments or default. (DE 47 at 5).  The Court rejects this argument.

8

Reading the cited provisions of section 9 in their entirety, and in the context of the agreement as a whole, it is clear that section 9 concerns the parties' agreement to keep confidential the terms of the agreement itself—including perhaps most importantly Plaintiff's release of Defendant in exchange for an established forbearance period during which Plaintiff could endeavor to sell the mortgaged property—and the court proceedings leading up to the agreement.  It is true that the agreement included a requirement that both parties refrain from making disparaging or negative remarks about one another.  But, reasonably read in context, the agreement required non-disparagement going forward from the agreement's effective date.  As discussed above, Defendant honored this agreement.  It would be a stretch to find that the agreement also implicitly obligated Defendant to alter or modify accurate, prior credit reporting.  *See Jacobs v. Petrino*, 351 So.2d 1036, 1039 (Fla. 4th DCA 1976) ("Where a contract is simply silent as to a particular matter, that is, its language neither expressly nor by reasonable implication indicates that the parties intended to contract with respect to the matter, the court should not, under the guise of construction, impose contractual rights and duties on the parties which they themselves omitted"); *S. Crane Rentals, Inc. v. City of Gainesville*, 429 So.2d 771, 773–74 (Fla. 1st DCA 1983) ("if a party desires [an important] provision ..., such a provision must be expressly provided for in the contract").

    Moreover, even assuming the salient provisions were ambiguous, Defendant has set forth undisputed extrinsic evidence showing that two days before the settlement agreement was signed, Defendant's counsel sent Plaintiff's counsel an email advising that Defendant "will not agree to change, suspend or alter its credit reporting" and that the "loan to [Plaintiff] is in default due to non-payment and will be reported as such."  (Purington Aff. ¶¶ 13-14, Ex. D).  This email provides clarification and is consistent with the settlement agreement's plain

9

terms. Based on the foregoing, the Court concludes as a matter of law that the general scope and intent of the parties' settlement agreement did not obligate Defendant to modify prior credit reporting.

### 3. *Damages*

Lastly, even if Defendant's credit reporting somehow constituted a breach of the settlement agreement, Plaintiff fails to show that such a breach caused any recoverable damages. In conclusory fashion, Plaintiff's response claims his damages are "readily calculable" considering his interest rate at the time of initiating the underlying $4,00,000 loan and his later, less favorable loan terms. (DE 47 at 6). Further, Plaintiff "anticipates the testimony of banking officers regarding the 12% loan at the time of trial." (*Id.* at 7).

Plaintiff relies upon an "Adverse Action Notice" sent to him from Palm Beach Community Bank on March 11, 2016 as his proof of damages. (Pl. Aff. Ex. 4, DE 47-1 at 16). As emphasized by Plaintiff, the notice shows he was denied a loan "due to the negative remarks on my credit file from [Defendant], specifically 'delinquent past or present credit obligations with others." (*Id.*, Pl. Aff. ¶ 13). What Plaintiff fails to mention, however, is that the notice cites additional reasons for the denial having nothing to do with Defendant, including "cash flow insufficient to service existing and/or new debt" and "insufficient personal liquidity post closing (after equity into lot purchase). (DE 47-1 at 16). Plaintiff also relies upon a "financing proposal" letter sent to him on March 25, 2016 from CBK Financial Solutions expressing interest in extending a $3,400,00 loan to Plaintiff at a fixed interest rate of 12%. (Pl. Aff. Ex. 7, DE 47-1 at 24-26). By its express terms, the letter is a proposal only and not a "commitment." (*Id.*). Neither the notice or the letter are helpful to Plaintiff's cause.

10

Plaintiff's reliance on the "anticipated" testimony of unidentified "banking officers" is similarly unhelpful.

In sum, Plaintiff's arguments at this summary judgment stage serve only to underscore the "speculative"—and thus non-triable—nature of his damages. *See generally Meadows v English, McCaughan & O'Bryan*, 909 So.2d 926 (Fla. 4th DCA 2005) (when evidence on damages is too speculative it is not proper for jury consideration); *Levitt-Ansca Towns Park Partnership v Smith & Co.*, 873 So.2d 392 (Fla. 4th DCA 2004). The record lacks any evidence that Plaintiff was denied more favorable loan terms, much less that he was denied as a result of Defendant's credit reporting activities.

### IV.    CONCLUSION

There is no genuine issue of material fact necessitating a trial in this case. Defendant has met its burden of citing to evidence demonstrating, as a matter of law, that Defendant did not breach the parties' settlement agreement as Plaintiff alleges. The only negative credit reporting pertaining to Plaintiff arose out of Plaintiff's undisputed loan default and, importantly, such reporting predated the settlement agreement's effective date. Moreover, the settlement agreement speaks for itself. There is no express provision regarding credit reporting and, moreover, an undisputed email exchange from two days before the settlement agreement's date demonstrates that Defendant clearly refused to "change, suspend or alter its credit reporting." Additionally, Defendant has met its burden of citing to evidence showing that Plaintiff was not damaged. Confronted with Defendant's well-supported summary judgment motion, Plaintiff has not come forward with evidence showing any triable issues of fact regarding two essential elements of his claim.

Accordingly, the Court **ORDERS** that Defendant's Motion for Summary Judgment (DE 43) is **GRANTED.**  Plaintiff's single count for breach of contract fails as a matter of law and is hereby **DISMISSED WITH PREJUDICE**.  A separate final judgment shall issue as required under Rule 58.

**DONE AND ORDERED** in Chambers at West Palm Beach in the Southern District of Florida, this 26th day of April, 2017.

_____
DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE